IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| BRITTINI LEVANDOFSKY, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 2:20-cv-509 |
| UNITED ONE RESOURCES, INC., | : |
| Defendant. | : |

**CLASS ACTION COMPLAINT**

COMES NOW the Plaintiff, Brittini Levandofsky, ("Plaintiff"), by counsel, and for her Complaint against the Defendant, she alleges as follows:

**PRELIMINARY STATEMENT**

1. When enacting the Fair Credit Reporting Act, Congress found that consumer reporting agencies "have assumed a vital role" in society, and there was a need to ensure that they "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S. Code § 1681(a)(3)-(4). To accomplish Congress' goal, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), which is one of the cornerstone provisions of the statute.

2. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires it to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This section imposes a high, and often disregarded, standard on credit reporting agencies. *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that "'assure' means 'to make sure or certain:

put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

3. Defendant United One Resources, Inc., is a "reseller" of consumer reports that assembles and merges information contained in the databases of the "Big 3" nationwide consumer reporting agencies—Experian, Equifax, and Trans Union. Defendant "resells" this merged information in what is commonly referred to as a "tri-merged credit report" to various third parties, such as mortgage lenders. Like a traditional consumer reporting agency, the FCRA mandates that resellers use reasonable procedures to assure maximum possible accuracy whenever they publish a consumer report. *See* 15 U.S.C. § 1681a(u) (defining a reseller as a consumer reporting agency when it assembles and merges information contained in the database of another consumer reporting agency and does not maintain a database of its own from which new reports are produced).

4. Even though it is a reseller of the information, it appears that Defendant has no procedures whatsoever to assure the accuracy of the information it publishes about consumers. Instead of complying with its independent obligations to assure maximum possible accuracy, it appears that Defendant purchases consumer reports from other sources to combine and resell without any policies or procedures in place to ensure the accuracy of the information, even when the information is obviously incorrect.

5. This lawsuit challenges Defendant's failure to adopt reasonable procedures to prevent the erroneous publication of deceased information in its credit reports. In this case, likely representative of numerous others, Defendant published grossly inaccurate credit information concerning Plaintiff to her mortgage company even though it was apparent—on the face of the

report—that Plaintiff was not deceased as two of the three nationwide consumer reporting agencies reflected she was alive and making payments on multiple creditors. Plaintiff was nonetheless denied a mortgage loan because Defendant simply regurgitated inaccurate information it obtained from Equifax without reviewing or considering the illogical inconsistencies before selling that information to Plaintiff's mortgage company. *See* Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Report with Summary of Interpretations* 67 (July 2011) (explaining that a consumer reporting agency "must maintain procedures to avoid reporting information with obvious logical inconsistencies, such as a credit account opened when the consumer was known to be a minor").

## JURISDICTION

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

7. Venue is proper in this District and Division because a substantial part of the events and omissions giving rise to the claim occurred in this District and Division

## PARTIES

8. Plaintiff is a natural person living within this Division and is a "consumer" as defined by 15 U.S.C. §1681a(c).

9. Defendant United One Resources, Inc. ("Defendant") is a corporation organized under the laws of Pennsylvania and a "reseller" as defined by § 1681a(u) of the FCRA. At all times relevant to this Complaint, Defendant was a business engaged in the assembly of information contained in the databases of Equifax, Experian, and Trans Union for the purpose of furnishing such information to third parties.

## FACTUAL ALLEGATIONS

**A.      Defendant is a reseller of consumer reports.**

10.     The Big 3 consumer reporting agencies—Experian, Equifax, and Trans Union—regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, the Social Security Administration, and other furnishers.

11.     Experian, Equifax, and Trans Union collect their credit information from thousands of sources and distribute that information to their customers/subscribers, such as Defendant.

12.     Although many of their customers are creditors, Experian, Equifax, and Trans Union generate significant revenue by selling credit information to "resellers" of consumer reports, like Defendant.

13.     After receiving the credit information (usually at a lower cost because of their volume) from the credit bureaus, resellers then assemble and merge the credit information obtained into a 3-bureau credit report, also known as a "tri-merge" or "merged infile" credit report, and sell them to various mortgage lenders throughout the country.

14.     Tri-merge credit reports are unique to the mortgage industry because applying for a mortgage loan is different in many ways from applying for other types of loans, such as a credit card, where a creditor often obtains credit information from just one credit bureau.

15.     When Defendant requests credit information from the credit bureaus for a particular consumer, the credit information is exchanged via an automated process, and the credit bureaus send the raw credit data to Defendant electronically.

16. After receiving the raw credit data from the credit bureaus for a particular consumer, Defendant assembles, merges, and normalizes the credit information, exactly as received from Equifax, Experian, and Trans Union, into a Merged Infile credit report.

17. Accordingly, Defendant is a "reseller" as defined at 15 U.S.C. § 1681a(u), which is a "consumer reporting agency that—(1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assemble or merged information from which new consumer reports are produced."

**B.  Plaintiff's experience and Defendant's lack of procedures.**

18. Plaintiff is an active-duty servicemember in the United States Navy.

19. On or around July 17, 2019, Plaintiff applied for a mortgage loan with Southern Trust Mortgage in Virginia Beach.

20. As part of this process, Southern Trust requested a copy of Plaintiff's credit report from Defendant.

21. Defendant furnished a tri-merge credit report to Southern Trust Mortgage dated July 17, 2019, which contained credit information about Defendant.

22. The credit report erroneously indicated that Plaintiff was deceased.

23. The credit report that Defendant furnished to Southern Trust Mortgage caused Plaintiff to be denied for a mortgage based on Defendant's reporting that Plaintiff was deceased.

24. This information was inaccurate—Plaintiff is alive.

25. The Defendant's erroneous reporting of Plaintiff as deceased was based on the erroneous information it received from Equifax only. Thus, the "deceased" status was contradicted within Defendants' own report by the information it obtained from Trans Union and Experian.

26. Defendant's placement of the inaccurate information in Plaintiff's consumer report was caused by Defendant's failure to implement and follow reasonable procedures to assure that the information it was publishing regarding consumers was as accurate as possible.

27. If Defendant had reasonable procedures (or any procedures whatsoever) it could have easily determined that the information it published regarding Plaintiff was inaccurate and she was alive.

28. Most notably, this would include the most basic procedure of resolving conflicting information within its own report. Here, the deceased information that Defendant reported originated from Equifax, while information from Experian and Trans Union demonstrated that Plaintiff was alive and active. In other words, Defendant knew that it was publishing inaccurate information regarding Plaintiff because Plaintiff could not be both active and deceased. Defendant should have had a procedure in place to resolve this conflict rather than knowingly publishing false information.

29. Upon information and belief, Defendant routinely sells credit reports for living consumers with active credit histories, which include a notation indicating that the living consumer is "deceased" and does not have a credit score.

30. Upon information and belief, Defendant does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" notation on that consumer's Merged Infile credit report.

31. Upon information and belief, Defendant does not employ any procedures at all to assure that a consumer with a "deceased" notation on his/her Merged Infile credit report is, in fact, actually deceased before including the "deceased" notation on that consumer's report and selling that report for profit.

32. Even in instances where other data on the face of the consumer's Merged Infile report indicates that he/she is not deceased, such as current and active credit history, Defendant employs no procedures to assure that a consumer with a "deceased" notation on his/her report is, in fact, actually deceased before including the "deceased" notation in that consumer's file.

33. In sum, Defendant also has no procedures to ensure that a consumer with a "deceased" mark on his/her report is actually deceased before including the "deceased" notation on that consumer's report.

34. As a result of Defendant's misconduct, Plaintiff suffered actual damages, including but not limited to: denial of her mortgage application, emotional distress, and damage to her reputation.

**C.    Defendant's violations of the FCRA are willful.**

35. The Supreme Court has held that willfulness under the FCRA encompasses not only a knowing violation but also a violation committed in reckless disregard of statutory obligations. *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007).

36. Recklessness is measured by an objective standard: conduct that creates an "unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68.

37. In this instance, Defendant willfully violated the FCRA because its procedures caused an unjustifiably high risk of harm that was either known or was so obvious it should have

been known. More specifically, Defendant had information available to it—including information from Experian and Trans Union and dozens of accounts included in the report—demonstrating that Plaintiff was not deceased.

38. As the Federal Trade Commission has explained, reasonable procedures to assure maximum possibly accuracy include "establish[ing] procedures to avoid reporting information from its furnishers that appears implausible or inconsistent." FTC, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Report with Summary of Interpretations* 67 (July 2011), available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

39. A credit reporting agency "must maintain procedures to avoid reporting information with obvious logical inconsistencies, such as a credit account opened when the consumer was known to be a minor" or, as here, where a consumer is reported as deceased even though she is alive. *See id.* at 68.

40. If Defendant had reasonable procedures in place that were consistent with the FTC's guidelines and the plain language of the FCRA, Defendant would not have reported the inaccurate, derogatory information concerning Plaintiff.

41. By way of further example and without limitation, Defendant's conduct was willful because it knew or should have known of the inadequacy of its procedures through lawsuits in other jurisdictions against its competitors. *See, e.g., Ocasio v. CoreLogic Credco, LLC*, 2015 WL 5722828, at *3 (D.N.J. Sept. 29, 2015) (denying summary judgment in a § 1681e(b) case because the reseller "reiterated inaccurate information and did not independently verify the data it received."); *Starkey v. Experian Info. Sols., Inc.*, 32 F. Supp. 3d 1105, 1109 (C.D. Cal. 2014)

(rejecting a reseller's summary judgment argument that "a reseller provides an 'accurate' report simply by accurately reproducing the information furnished to it by other credit bureaus").

42. Upon information and belief, Defendant has been further notified of the inadequacy of its procedures through disputes submitted by consumers and complaints from mortgage companies.

43. Despite these complaints and lawsuits, Defendant has continued to rely on its inadequate procedures to the detriment of Plaintiff and class members.

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### Class Claim

44. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

45. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows:

> All natural persons who were the subject: (1) of a consumer report furnished by the Defendant to a third party within the five years preceding the filing date of this Complaint; (2) where the Defendant's consumer report contained a notation that the consumer was deceased in at least one scoring model; and (3) where one or more other scoring models did not also contain a deceased notation.

Plaintiff is a member of this class.

46. **Numerosity**. Upon information and belief, Plaintiff alleges that the class is so numerous that joinder of the claims of all class members is impractical. The class members' names and addresses are identifiable through the Defendant's documents and records, and the class members may be notified of the pendency of this action by publication or mailed notice.

47. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over

the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant blindly includes deceased information it obtains from credit bureaus into its reports without any procedure to assure the accuracy or completeness of the underlying data; (b) whether this conduct violated the FCRA; and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the Plaintiff's and putative class members' rights.

48.     **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all claims are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. §1681e(b). This claim challenges the Defendant's consumer reporting procedures and does not depend on any individualized facts. For purposes of class certification, Plaintiff seeks only statutory and punitive damages. Such damages are appropriate in circumstances like this one where injuries are particularized and concrete, but difficult to quantify, rendering the recovery of class statutory damages ideal and appropriate. In addition, Plaintiff is entitled to the relief under the same causes of action as the other class members.

49.     **Adequacy**. Plaintiff will fairly and adequately protect the class's interests. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such responsibilities.

50.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

    a.     As alleged above, the questions of law or fact common to the class members

predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. The statutory and punitive damages sought by each member are such that the individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

      b.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by Defendant's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

      51.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it published and maintained regarding the Plaintiff and the putative class members by blindly publishing deceased notations from Experian, Equifax, and Trans Union even though it contradicted other information in the report.

52.     Defendant's violation of 15 U.S.C. § 1681e(b) was willful, rendering the Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, the Defendant was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.[1]

53.     In addition, the Plaintiff and each class member suffered an actual injury because of the Defendant's violation, as alleged herein.

54.     Plaintiff and the putative class members are entitled to recover statutory damages, punitive damages, costs, and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff moves for class certification and for judgment against the Defendant for statutory damages, punitive damages, and attorneys' fees and costs, as well as any other relief that the Court finds just and appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**BRITTINI LEVANDOFSKY**

By:     */s/ Kristi C. Kelly*
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
*Counsel for Plaintiff*

---

[1] Plaintiff seeks statutory and punitive damages on behalf of herself and others. If class certification is denied, Plaintiff intends to seek actual damages for Defendant's violation.